UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER AND KATHERINE VONBANK )<br>           Plaintiffs                     )<br>v.                                             )<br>                                             )<br>DAVID FREDRICK, Ph.D.               )<br>           Defendant                    ) | Civil Action No.: |

## **VERIFIED COMPLAINT AND JURY DEMAND**

      1.      This is a Verified Complaint and Jury Demand brought by Peter and Kathy Von Bank ("the Von Banks") residents of Shakopee, Minnesota against David Fredrick, Ph.D. ("Fredrick) of Gardner, Massachusetts, **their friend and trusted advisor** – a resident of Gardner, Massachusetts -- for breach of contract for refusing to satisfy his promise to convey certain shares in a limited partnership to them in return for their promise to cause a business competitor to change its name in a way that is not substantially similar to name of the defendant's business. The Verified Complaint alleges that once the Plaintiffs satisfied their performance and called upon the Defendant to perform, the Defendant has not done so and has not made efforts to call them back to assure them that he would perform. The Plaintiffs seek damages of $100,000, but also seek specific performance and a preliminary injunction that will fully address and prevent those damages, if the Defendant is prevented from continuing to breach his contract with the Von Banks. **If the preliminary injunction is allowed or the Defendant otherwise decides to satisfy his contract, the Von Banks will suffer no damages and are not expected to seek monetary relief from the Defendant.**

## PARTIES

2. The Von Banks are residents of Shakopee, Minnesota and are of legal age and capacity.

3. Fredrick is a resident of 74 Edgell Street, Gardner, Worcester County, Massachusetts and is of legal age and capacity. **Until this past month, the Von Banks considered Fredrick to be their friend and trusted advisor, as did their lawyer.**

## JURISDICTION

4. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship of the Parties and the amount in controversy exceeds the jurisdictional limit.

5. This Court has personal jurisdiction and venue over the Defendant because he resides in the Commonwealth of Massachusetts.

## FACTS

### THE PRIOR LITIGATION AND INVOLVEMENT OF THE PLAINTIFF AND DEFENDANT IN MEDICAL UNIVERSITY OF THE AMERICAS-BELIZE, LP

6. On or about August 3, 2007, the Plaintiffs filed suit, in this court, against Jeffrey and Renae Sersland, and other entities, in a case styled as *Von Bank v. Sersland, et al.*, C.A. No. 07-40205-FDS ("Sersland Suit").

7. The suit stemmed from the Von Banks' involvement as investors in a Belizean business known as Medical University of the Americas-Belize, Ltd. ("MUA-B"). In 2005 and 2006, the Von Banks loaned the Serslands some $1.8 million, as memorialized by a promissory note, and they assumed an equity position in the operations.

8. MUA-B was co-founded by Sersland and Fredrick. Frederick was an experienced owner and operator of Caribbean medical schools, having operated Medical University of the Americas-Nevis ("MUA-Nevis") and Saba University School of Medicine ("Saba").

9. Fredrick and Sersland were issued 50 percent of the shares of MUA-B.

10. Sometime after MUA-B began operation, Fredrick elected to resign from MUA-B and sell his equity to Sersland. He and the Serslands apparently agreed that the equity would be sold in two payments, one of $500,000 and the other of $350,000. Apparently they agreed that should the Serslands fail to make both payments in full, Fredrick would retain his shares.

11. Of the $1.8 million loaned by the Von Banks to Sersland, $500,000 was used by the Serslands to make the first payment to Fredrick. However, the Serslands did not make the second payment, and as a consequence Fredrick has retained both the $500,000 and all of his shares in MUA-B.

## FREDRICK'S ASSISTANCE TO THE VON BANKS

12. In the fall of 2006, the Von Banks were contacted by Fredrick about another matter and eventually discussed Fredrick's offer of advice with regard to obtaining reimbursement of funds loaned to the Serslands and used by MUA-B.

13. Fredrick, aware that $500,000 of their lost investment had gone to him, promised them that if they could convince the Serslands to repay the Von Bank and to change the name of Medical University of the Americas-Belize to another name that was not substantially similar to that of Nevis, he would return or otherwise cancel his unrecorded shares in MUA-B.

14. On April 9, 2007, Fredrick repeated his promise, this time in writing, that he would "not pursue further action to assert my 50% shares" if the Von Banks are repaid, in total, and the name of MUA Belize is changed immediately. (Email from David Fredrick attached as Exhibit A").

15. In a later email to the undersigned, Fredrick modified his position, stating that he would surrender or otherwise release his interest in the MUA-B shares even if the Von Banks do not receive full payment, if they are satisfied with the settlement. He wrote, "Again, for the record, I do not want or expect any financial benefit from this case. I would like to see the Von Banks get back some/all of their money and you to get paid. I will be more than happy to pay for any depositions." (An excerpt of that email is attached as Exhibit B, and the full email is available for inspection, should the Defendant challenge the exhibit). Fredrick has never made demand upon the Von Banks for any portion of the settlement proceeds.

### THE VON BANKS NEGOTIATE A SETTLEMENT WITH THE SERSLANDS

16. On October 29, 2008, the Von Banks negotiated a satisfactory settlement with the Serslands. That afternoon, from the conference room where the settlement was signed by Jeffrey Sersland, their counsel called Fredrick to tell them of the end of their 22 months of litigation. While they had signed a confidentiality agreement with Sersland, they received permission from Sersland's counsel to discuss the settlement and the agreement with Fredrick, since he was expected to honor his promise and return or cancel his shares.

17. Fredrick congratulated the Von Banks and told them he'd run whatever paperwork he had to sign through his attorney. The next day, Fredrick called counsel for

the Von Banks and asked for more details on the settlement, again characterizing the settlement as satisfactory from the point of view of the Von Banks.

18. The Settlement Agreement called for the Von Banks, *inter alia*, to deliver Fredrick's shares to MUA-B or otherwise cause him to release them by December 1, 2008. If they could not do so, the Defendants were fully relieved of any performance on the settlement agreement, and the settlement would fall through.

19. The Settlement Agreement provided that the name of the school operated by MUA-B would be changed to a name that would not be a derivative of "Medical University of the Americas" or "MUA" by January 1, 2009.

20. The Settlement Agreement called for a payment of $100,000 by December 1, 2008, and further payments over three years. The amount of the additional payments are known to the Defendant, but are withheld from this pleading as confidential. It will be disclosed upon instruction from the Court.

**FREDRICK HAS NOT ACTED TO HONOR HIS PROMISE TO THE VON BANKS THAT HE WILL RETURN OR CANCEL HIS SHARES IN MUA-B AND HE DOES NOT RETURN THEIR COMMUNICATION TO ASSURE THEM HE WILL**

21. On October 31, 2008, counsel for the Von Banks received a telephone call from counsel from Fredrick, informing him he'd been contacted by Fredrick about the settlement but that he'd be leaving that day for a two-week vacation. He would turn to the request of Fredrick when he returned.

22. The same day, Fredrick sent an email to the Von Banks directly, copying his wife and business associate Patricia Hough ("Hough") informing them of a "glitch", in that the shares in MUA-B were still in his name, but were in the custody of EIC Holding Company, Inc. ("EIC"), the company that purchased his interest in Nevis in or

about May of 2007. EIC changed its name on April 22, 2008 to R3 Education, Inc. Fredrick explained that because David Gill ("Gill"), a co-Defendant in the Sersland Suit, recently sued EIC, he would have difficulty convincing EIC to "just turning over the shares to Gill". (Email of October 31, 2008 attached hereto as Exhibit C). Fredrick waited for the Von Banks to perform before informing them of this "glitch."

23.  The shares owned by Fredrick were restricted, in that they could not be sold other otherwise conveyed by Fredrick without offering them first to his fellow shareholders, which was not done. (See Articles of Association, Par. 14, attached hereto as Exhibit D).

24.  The news that EIC was given custody of the shares came as a surprise to the Von Banks, because, since May of 2007, Fredrick repeatedly promised to return or cancel his shares in MUA-B upon the stated conditions, and never told them he'd given the shares to EIC in April of 2007, when Fredrick sold his school to EIC.

25.  A review of the docket in the case of *Gill v. Fredrick*, Worcester Superior Court, C.A. No. 02-0776, shows that EIC was never added to that lawsuit, and a "Saba School of Medicine Foundation" was served not three weeks prior to October 31, 2008, but in November of 2007, a year before Fredrick said EIC was added.

26.  After the Von Banks completed performance of their promise to cause MUA-B to change its name, Fredrick told the Von Banks that he would not return or otherwise cancel his shares in MUA-b unless Gill would agree to dismiss EIC (presumably Saba School of Medicine Foundation) from the Worcester Superior Court case. This condition was never stated before the Von Banks' completion of performance. The Von Banks have no control over Gill in any matter.

27. Whether or not EIC retained control of the certificates, it is a fact that as a result of a non-competition agreement with EIC, Fredrick cannot manage, direct or operate a medical school in Belize.

28. On November 2, 2008, Katherine Von Bank wrote to Fredrick and Hough, suggesting to them that they could cancel Fredrick's shares even if he could not obtain the originals from EIC. She sought assurances that Fredrick would return or otherwise cancel his interest in the MUA-B shares, reminding him, "This is what you told us you would do upon a satisfactory settlement in our case against Sersland and Gill, and upon the defendants' commitment to change the name from Medical University of the Americas, to a name that is no derivative of those words or the letters "MUA". So we just want you to finish the deal." (Copy of the email of November 2, 2008 is attached as Exhibit E).

29. Three weeks have passed, and Fredrick has never responded to his friends, the Von Banks. Their lawyer did contact the undersigned on November 23, 2008. Fredrick has never challenged their description of the contract, as contained within Exhibit E. Instead, Fredrick claimed he no longer possessed those shares, in reference to the unauthorized transfer of the shares to a non-member.

30. Hough, wrote to the Von Banks on November 9, 2008 that, "It is a movement in the right direction – Jeff and Gill obviously do not want depositions or to go to court. Take care, Pat." She did not deny the existence of the contract between the Von Banks and her husband.

31. On November 10, 2008, Fredrick emailed to the undersigned -- his only communication with the Von Banks or their counsel since October 31, 2008 -- writing, "I

am trying to work out something on the negotiations with Serslands. Can you send me a copy of the agreement so I can see the details". A copy of the settlement agreement was sent to him that day, with a copy to his counsel.

32. Fredrick's lawyer returned from his vacation on November 12, 2008. The undersigned called him that afternoon, and was told that counsel would speak to Fredrick and call him back. The next day, the undersigned emailed counsel for Fredrick with a proposed Release of Shares.

33. Counsel for Fredrick did not reply to the undersigned for 12 days. Counsel for the Von Banks called counsel for Fredrick at least once every business day in that time. His persistence is because the Plaintiffs were extremely anxious, hoping Fredrick, **whom they considered their trusted friend**, would honor his contract with them or at least address their extreme anxiety and communicate with his lawyer about his intentions.

34. The Von Banks have already performed each and every obligation called for in the Settlement Agreement executed in the Sersland Suit, except the requirement that they provide proof of cancellation of Fredrick's 5,000 shares in MUA-B.

## ANALYSIS OF EFFECT OF PERFORMANCE v. BREACH

35. If the Defendant insists on breaching his contract to return or cancel his shares, the net effect will be as follows:

    A)    **The Von Banks Lose** -- the settlement of the Sersland Suit will dissolve and the Von Banks will lose their $100,000 down payment, and the potential to receive much more. As described below, their 3,500 shares in MUA-B become worthless;

    B)    **MUA-B Loses** -- MUA-B will be unable to raise capital, because no arms-length investor will risk an investment in an entity where

        the rights, if any, of the holder of 5,000 of 10,000 shares may become an issue in the future;

    C)    **Fredrick Loses – Yes Fredrick Loses** – Once, MUA-B fails, Fredrick's 5,000 shares will be worth nothing. He will have lost the opportunity to trade his otherwise worthless shares for the commitment of MUA-B to change its name from one that is confusingly similar to his school. The Von Banks sue him for the loss of the $100,000 down payment on the settlement;

    D)    **EIC Loses** -- Gill and his potential investors will be free to invest in another Caribbean medical school, without addressing the Von Banks' loss. They may call their new project whatever they wish, including a name that is confusingly similar to MUA, because it will be in a different Caribbean country than Nevis or Saba. They also may relate to potential investors that they arranged to save MUA-B and the Von Banks' investment, at least in significant part, but Fredrick, their supposed friend, caused the harm to the Von Banks.

36.    On the other hand, if Fredrick performs his agreement with the Von Banks on or before November 30, 2008, the following scenario occurs:

    A)    **The Von Banks Win** – They receive the first installment of the settlement in the Sersland Suit, and retain the potential to receive future payments and receive stock in an ongoing enterprise;

    B)    **MUA-B Wins** – MUA-B will, according to Gill, be in a position to receive a capital infusion and return to the business of operating a medical school, albeit under a new name;

    C)    **Fredrick Wins – Yes, Fredrick Wins** – Fredrick has the opportunity to trade his unmarketable shares in MUA-B for the promise of MUA-B to change its name so that it is not confusingly similar to the name of his school, and the name of the school he recently sold. His performance of his contract with the Von Banks provides an absolute defense to their claim against him for $100,000 in damages, and the Von Banks drop the instant suit; and

    D)    **EIC Holdings, Inc., Wins** – As described in subparagraph C, the purchaser of one of Fredrick's "Medical University of the Americas" schools will win, because MUA-B will no longer be confused with it.

## COUNT I

## BREACH OF CONTRACT (DAMAGES)

37. The Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1-36 as if specifically set forth herein.

38. The Plaintiff and Defendant formed an enforceable bilateral contract, in which the Plaintiff promised to obtain the commitment of MUA-B to change the name of the school, and in exchange the Defendant would surrender his interest in shares of MUA-B issued to him. In addition, the Defendant's promise was conditioned on a satisfactory resolution of the defaulted Sersland Note, which has been resolved.

39. Fredrick has not released his interest in MUA-B and has refused to communicate to the Von Banks any intent to do so. As a consequence, the Von Banks consider Fredrick to be in breach of the bilateral contract, or in anticipatory breach of it, requiring them to file this lawsuit.

40. If Fredrick does not honor his contract to release his shares in MUA-B by November 28, 2008 – the last business day before the Plaintiffs must convey that release to the Defendants in the Sersland Suit – then the Von Banks will be forced to breach the Sersland Settlement and the Von Banks will lose the $100,000 initial payment, as well as any expectation of further payment.

WHEREFORE, the Plaintiffs, Peter and Katherine Von Bank, respectfully request this Court award damages in their favor and against the Defendant David Fredrick, in the amount of $100,000 for Breach of Contract.

## COUNT II
## FOR SPECIFIC PERFORMANCE

41. The Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1-40 if specifically set forth herein.

42. Money damages are insufficient to address the Von Banks' expected loss in the event Fredrick does not honor his contract with them.

43. This is because the result of a breach by Fredrick is not only the loss of the $100,000 down payment, but the loss of any right to the further payments, due over the next three years.

44. The breach by Fredrick will also prevent MUA-B from reorganizing under a different name, from which reorganization the Von Banks will remain a shareholder and hope to enjoy a profit.

45. Money damages do not address all of these losses, because the risks inherent with the ability of MUA-B or Sersland to make future payment, or for the shares in MUA-B to someday recover their value, are speculative.

46. Of course, if Fredrick specifically performs the contract, they will suffer a $100,000 loss as alleged in Count I, and the Plaintiffs will not seek such sums.

WHEREFORE, the Plaintiffs, Peter and Katherine Von Bank, respectfully request this Court order Fredrick to specifically perform his contract to cancel or otherwise return his shares in MUA-B, in return for their completed promise to cause MUA-B to change the name of the school, as herein described.

## COUNT III
### For a Declaratory Judgment

47. The Plaintiffs repeat the allegations of Paragraphs 1 through 46 and incorporate them by reference as if they are specifically set forth herein.

48. A genuine controversy exists concerning the validity of the transfer of any shares in MUA-B from Fredrick to EIC., or any other non-member of MUA-B.

49. Any transfer of shares in MUA-B to a non-member is void, because the transferor must offer the shares to a member before any such transfer.

50. Fredrick transferred his shares in MUA-B to EIC., without first offering them to the members of MUA-B.

51. The transfer of shares in MUA-B by Fredrick to EIC, or any other non-member, is therefore void, as it was without authority.

WHEREFORE, the Plaintiffs, Peter and Kathryn Von Bank, hereby seek an Order declaring any transfer of shares of MUA-B by Fredrick to a non-member to be void, unauthorized and unenforceable.

## PRAYERS FOR RELIEF

1. On Counts I of the Verified Complaint, award damages in favor of the Plaintiffs and against Fredrick in an amount of $100,000, plus costs of this litigation;

2. On Count II of the Verified Complaint, enter a Permanent Injunction ordering the Defendant to specifically perform his contract to cancel or otherwise return the 5,000 shares of stock in Medical University of the Americas-Belize, LP, in return for the Plaintiffs' satisfied promise that the name of the school will change, now that the Plaintiffs have settled the Sersland Suit;

3. On Count III, and after hearing, enter a Permanent Injunction ordering the Defendant to rescind any transfer of shares of MUA-B by Fredrick to EIC, or to any non-member; AND

4. On Counts II and III, and after hearing, issue a Preliminary Injunction: (1) finding the transfer of any shares in MUA-B by Fredrick to any non-member to be void, and then (2) prohibiting Fredrick from breaching his contract and Ordering him to cancel or otherwise return the 5,000 shares in Medical University of the Americas, LP, issued to him, now that the Plaintiffs have settled the Sersland Suit;

5. Issue an ORDER OF NOTICE on Prayer 4 of this Verified Complaint, requiring the Defendant himself to appear before this court, or for him to provide authority for his attorney to resolve this matter or to show cause why he should not be enjoined from breaching his contract with the Von Banks, and why his transfer of shares in MUA-B should not be unwound. Said hearing must be scheduled for November 25, 26, 27 or 30, 2008; and

6. Award costs of this lawsuit, including reasonable attorneys' fees.

## JURY DEMAND

The Plaintiffs, Peter and Katherine Von Bank, hereby demand a jury upon Count I herein.

Respectfully submitted,
Peter and Katherine Von Bank,
By their Attorney,

Kenneth I. Gordon, BBO# 556762
63 Chatham Street
Boston, MA 02109
(617) 742-4602

Dated: November 24, 2008

## VERIFICATION

We, Peter and Kathy Von Bank, have read this Verified Complaint in its fourteen (14) pages, including this page, and we certify under pains and penalties of perjury that all allegations for which we have pled on first-hand knowledge are true and correct and that all allegations that we have pled on information and believe are true, to the best of our information and belief.

_____
Peter Von Bank

_____
Katherine Von Bank