UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER AND KATHERINE VONBANK )<br>Plaintiffs )<br>v. )<br>) | |
| DAVID FREDRICK, Ph.D. ) | Civil Action No.: |
| Defendant _____ ) | |

### MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Plaintiffs, Peter and Katherine Von Bank ("Von Bank") have moved for a

Preliminary Injunction, seeking an Order that the Defendant, David Fredrick, Ph.D.

("Fredrick") be restrained from breaching his contract with the Von Banks.  They request

he be ordered to release, return or otherwise waive any rights to 5,000 shares in Medical

University of the Americas, Ltd ("MUA-B"), a limited partnership organized under the

laws of Belize.  They request that Fredrick be ordered to perform the transaction by the

close of business on November 30, 2008.

### I.      INTRODUCTION

The Von Banks respectfully refer the Court to their Verified Complaint for a

recitation of the facts upon which they base their motion for injunctive relief.  For

brevity's sake, the facts set forth in the Verified Complaint are not fully repeated here,

but are incorporated by reference. A summary of the most significant facts are repeated

herein.  The Court has jurisdiction to hear this matter, under diversity of citizenship. 28

U.S.C. § 1332.

## II.     SUMMARY OF FACTS

A summary of the facts that give rise to this need for a preliminary injunction is as follows:

1.  Fredrick is the holder of 5,000 of the 10,000 shares of MUA-B which operates a Caribbean school called Medical University of the Americas – Belize.

2.  Fredrick's shares are not marketable, due to transfer restrictions.  Fredrick cannot manage the business of MUA-B without violating a Covenant Not to Compete.  Therefore, Fredrick cannot make money either by selling his shares, or by taking over the operation of the business and making it profitable.

3.  Fredrick maximized the value of his shares by promising the Von Banks that they could use them, *inter alia*, as leverage to obtain a settlement in a suit filed in this court, *Von Bank v. Sersland*, et al., C.A. 07-40205-FDS ("Sersland Suit").  He told them he would surrender any rights to those shares if the Von Banks obtained the commitment from the defendants in the MUA-B suit that MUA-B's name would be changed  so it would not be confusingly similar to the name of the school he sold in 2007 to EIC Holdings, Inc. ("EIC") – MUA-Nevis.

4.  The Von Banks performed their end of the bargain.  On October 30, 2008, they executed a settlement agreement in the Sersland Suit. Among the settlement provisions is the commitment that MUA-B's name will be changed to one that is no derivative of  "Medical University of the Americas."

5. Some of the defendants in the Sersland Suit also agreed to pay the Von Banks $100,000 against a Promissory Note at issue in that lawsuit, and they will make significant further payments over the next three years.  The Von Banks will retain a 10 percent interest in the reorganized MUA-B.

6. The Von Banks must provide evidence that Fredrick's shares have been cancelled or returned by December 1, 2008.  Fredrick was asked by the Von Banks to provide such cancellation on October 30, 2008.  Since that time, he has not granted the request to do so, and except a few exceptions, has refused to return the Von Banks' emails and phone calls.

7. On October 31, 2008, Fredrick informed the Plaintiffs for the very first time that he had transferred his shares to EIC Holdings, Inc. the previous spring. The transfer was later represented as a sale. Such a transfer or sale is null and void, because paragraph 14 of the Articles of Association of MUA-Belize, Ltd., restricts the transfer of the shares to a non-member without offering the shares to a member first.  Fredrick did not offer the shares to a non-member first.

8. The bargain between the Von Banks and Fredrick constitutes a binding contract.  The consideration provided by the Von Banks is that they caused MUA-B to sign a binding agreement to change its name.  The consideration owed by Fredrick is the return of the shares.  Fredrick has refused to provide his consideration.

9.  Only after the Von Banks fully performed, Fredrick attempted to increase his

    price to cancel the shares, but demanding that they not only cause MUA-B to

    change its name, but that they cause Gill to dismiss his lawsuit against EIC.

10. As is set forth in the Verified Complaint, Fredrick has nothing to gain by

    breaching his promise to the Von Banks.  He has everything to lose. For that

    matter, EIC has nothing to gain and everything to lose if the shares are not

    cancelled.

11. To illustrate this point, we repeat paragraphs 35 and 36 of the Verified

    Complaint:

    **ANALYSIS OF EFFECT OF PERFORMANCE v. BREACH**

If the Defendant breaches his contract to return or cancel his shares, the net effect

will be as follows:

A)  **The Von Banks Lose** -- The settlement of the Sersland Suit will
    dissolve and the Von Banks will lose their $100,000 down payment,
    and the potential to receive much more under the settlement agreement
    and as shareholders in MUA-B;

B)  **MUA-B Loses** -- MUA-B will be unable to raise capital, because no
    arms-length investor will risk an investment in an entity where the
    rights to 5,000 shares may be asserted at any time;

C)  **Fredrick Loses – Yes Fredrick Loses** – Once, MUA-B fails,
    Fredrick's 5,000 shares will be worth nothing. He will have lost the
    opportunity to trade his shares for the commitment of MUA-B to
    change its name from one that is confusingly similar to MUA-Nevis.
    He is exposed to the Von Banks' suit for the loss of the $100,000 down
    payment on the settlement;

D)  **EIC Holdings Loses –** MUA-B and its owner, David Gill ("Gill") will
    be free to look into the operation of another school, without benefiting
    the Von Banks, and may choose a name for that school that offends not
    only Fredrick, but EIC.
    .

On the other hand, if Fredrick performs his agreement with the Von Banks

on or before November 30, 2008, the following scenario occurs:

A)    **The Von Banks Win** – They receive the $100,000 installment of the
       settlement in the Sersland Suit, and retain the potential to receive future
       payments and receive stock in an ongoing enterprise and this claim
       against Fredrick is satisfied;

B)    **MUA-B Wins** – MUA-B will, according to Gill, be in a position to
       receive a capital infusion and return to the business of operating a
       medical school, albeit under a new name;

C)    **Fredrick Wins – Yes, Fredrick Wins** – Fredrick has the opportunity
       to trade his unmarketable shares in MUA-B for the promise of MUA-B
       to change its name so that it is not confusingly similar to MUA-Nevis.
       The performance of his contract with the Von Banks provides an
       absolute defense to their claim against him for $100,000 in damages,
       and the Von Banks drop the instant suit. **He and his wife have a
       chance to restore his friendship with the Von Banks**; and

D)    **EIC Holdings, Inc., Wins** – As described in subparagraph C, the
       purchaser of one of Fredrick's "Medical University of the Americas"
       schools will win, because MUA-B will have a new name, one that no
       longer be confused with its MUA-Nevis school.

## III.    ANALYSIS

### A.  Standard for Issuance of a Preliminary Injunction

"A district court may issue a preliminary injunction only upon considering '(1)

the likelihood of success on the merits; (2) the potential for irreparable harm if the

injunction is denied; (3) the balance of the relevant impositions …; and (4) the effect (if

any) of the court's ruling on the public interest.'" *EF Cultural Travel BV, Explorica, Inc.,*

274 F.3d 577, 581 (1st Cir. 2001)(quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,*

102 F. 3d 12, 15 (1st Cir. 1996).

### B.  Likelihood of Success on the Merits

#### 1.      Breach of Contract

The Von Banks have presented an extreme likelihood of success on the merits for their claim for breach of contract.  To establish a breach of contract under Massachusetts law, the plaintiff must demonstrate that: (1) a valid, binding agreement exists; (2) the defendant breached the terms of the agreement; and (3) the plaintiff suffered damages from the breach.  *Brooks v. AIG SunAmerica Life Assur. Co*., 480 F.3d 579, 586 (1st Cir., 2007)(citing *Michelson v. Digital Fin. Servs*. 167 F.3d 715, 720 (1st Cir., 1999).

#### a.      Valid, binding agreement

The Von Banks present a valid, binding agreement.  Fredrick's own email confirms that he agreed to cancel his right to his 5,000 shares in MUA-B, in return for the Von Banks causing the defendants in the Sersland Suit to change the name of the school operated by MUA-B to a name that is not in conflict with the schools he operates or recently sold.  His offer, as modified by a later writing, was conditioned on the Von Banks receiving some or all of their money due them on a promissory note at issue in the Sersland Suit.  The offer was accepted by the Von Banks, and then the Von Banks performed. Fredricks received the consideration for which he bargained.

#### b.      Breach of that agreement

The Defendant has breached the terms of the contract by refusing to cancel or otherwise return his 5,000 shares in MUA-B.  He is in possession of the settlement agreement, and therefore is aware that the Von Banks deadline to perform is December 1, 2008. His deadline, therefore, has for all practical purposes come and gone, unless he relents upon receipt of the Verified Complaint in this action.

He is also in breach of that agreement by attempting to exact a greater price for

his performance than was bargained for, especially after performance was completed by

the Von Banks.  Only after they obtained the name change, Fredrick demanded that they

cause Gill to release EIC from a Superior Court case.  Fredrick's additional condition for

performance is improper and a breach of the contract.

### c.      Damages

The Plaintiffs will suffer damages if this injunction is not allowed. The result of

the breach of contract is that they cannot perform under the settlement agreement in the

Sersland Suit. They have performed all obligations otherwise required by that agreement.

If they cannot retire the Fredrick shares, they will immediately lose their right to the

$100,000 deposit they negotiated, and will lose the chance to recover remaining

payments under the settlement agreement. They will lose the opportunity to participate in

the reorganization of MUA-B (the settlement agreement confers upon them 10 percent of

the equity in the reorganized venture), as MUA-B will surely fold upon the failure of the

settlement agreement.

### 2.      Specific Performance

The Plaintiffs seek relief not only for Breach of Contract, but for specific

performance of that contract.   "In order for a court to order specific performance, a

plaintiff must establish that:  (1) an adequate remedy at law is unavailable; and (2) the

practical burdens of enforcement are not disproportionate to the advantages gained.

When examining the proportionality of the burdens and the advantages, courts must

ensure that the terms of the contract are 'sufficiently definite to provide the basis for an

appropriate order.'  Moreover, generally, 'a court will not compel performance if a

substantial part of the return performance has not been rendered.' Lastly, the court should consider difficulty in enforcement or supervision, and general principles of fairness and public policy." *Atlantech, Inc. v. American Panel Corp. et al.,* 540 F.Supp.2d 274, 285 (D.Mass., 2008)(citing *ER Holdings, Inc. v. Norton Co.* 735 F.Supp. 1094, 1103 (D.Mass., 1990), *Sanford v. Boston Edison Co.,* 316 Mass. 631, 56 N.E.2d 1, 3 (1944) and E.A. Farnsworth*, Contracts,* § 12.7).

### a.  Inadequate Remedy at Law

Should Fredrick continue down his current path, the Von Banks will suffer irreparable harm that is not compensable in money damages.  This is because in addition to the $100,000 down payment they will immediately lose, they will lose their potential to collect the remaining sums due under the settlement agreement, which sums are substantial.  They will also lose their right to participate in the reorganized MUA-B, as it operates under a different name.  This is because MUA-B will not reorganize in the absence of the return of the Fredrick shares.

The value of the loss of the chance to recover the remaining payments in the settlement agreement, as well as any potential recovery through their ownership share of MUA-B cannot be calculated at law. Should the Von Banks seek damages as to these elements, Fredrick will surely point out that such recovery is speculative.  We will never know if the defendants would have made further payments to the Von Banks, or if MUA-B would have been successful after reorganization.  We will never know what would have happened to the future payments called for in the settlement agreement or the future of MUA-B, because in all likelihood, MUA-B and its ability to make future payments

will cease to exist. An adequate remedy at law as to damages beyond $100,000 does not exist.

### b. The practical burdens of enforcement are not disproportionate to the advantages gained

Enforcing the requested relief is a relatively easy affair.  The Court simply orders the Defendant to perform his contract with the Von Banks by signing off on a waiver of his rights to the shares at issue, or by signing over the shares to the Von Banks or MUA-B.  Certainly, the Plaintiffs can easily report if this is not done.

The excuse offered by the Defendant, that he transferred or otherwise sold his shares in MUA-B to a third party, EIC Holdings, Inc., is a defense without merit.  Article 14 of the Articles of Association of MUA-Belize, Ltd., restricts the transfer of the shares to any non-member unless the members were offered the sale first.  The members were not offered the sale.  As the transfer occurred without authority, it is void and the right to the shares should be returned to Fredrick.  Fredrick is on notice of these restrictions, as the corporate laws of Belize, section 14(1) binds the members to the conditions of the Articles of Association as if they had been signed and sealed by each member.

The imposition of the injunction works to the benefit of all parties to this lawsuit, and several non-parties.  All that the Plaintiffs request is that the Defendant surrender shares of stock that, today, have value only to them and to MUA-B.  By next week, if the settlement agreement in the Sersland Suit is not satisfied, the shares will have value to no one at all – not even Fredrick.

By surrendering these otherwise worthless shares, the Defendant will be able to obtain the commitment of MUA-B to change its name, thereby benefiting himself, the school he still owns, and the corporation that purchased the school he sold in 2007.  This

is a valuable benefit to all three. He has maximized the benefit of his shares. There is no

disadvantage to anyone if the injunction is allowed.

### c. Performance by the Von Banks

The Von Banks obtained the agreement of MUA-B on October 30, 2008 to

change its name by January 1, 2009 to a name that is not a derivative of the words

"Medical University of the Americas" This is just the consideration sought by Fredrick.

There can be no doubt but that the Von Banks have performed.

### C.    Irreparable Harm Required for a Preliminary Injunction

The test for irreparable harm with regard to a request for a preliminary injunction

is identical to the test necessary to satisfy specific performance. The Plaintiffs therefore

refer to section III.B.2.a of this Memorandum.

### D.    Balance of Harms

The balance of harm is the aspect of the test for an injunction that most clearly

demonstrates the need for the Court to intervene, if the Defendant is unwilling to see the

logic and benefit of performing his obligation to the Von Banks.  As we have analyzed

above, the allowance of the preliminary injunction will not only pose no imposition on

the rights of the Defendant, it will actually benefit him.  The result will be that MUA-B

will be immediately obligated to change its name, and Fredrick will be immediately

relieved of damages in this lawsuit.

The imposition of the injunction will benefit two non-party business entities.

EIC, the entity to which Fredrick sold one of his "MUA" medical schools, will enjoy the

benefit of the name change.  MUA-B will be able to attract investors and reorganize.

The imposition of the injunction does not harm the Defendant in any way.  It forces him to relinquish his rights in 5,000 shares of MUA-B, the value of which will be a casualty of his breach.

### E.    Public Interest

The public interest is effected in only one way.  If Fredrick is ordered not to breach his contract with the Von Banks, the effect will be the resolution of not one but two lawsuits before this Court.  The public may have an interest in voluntary resolutions in lawsuits.  Therefore, the public interest will benefit from the imposition of the requested injunction.

### IV.    CONCLUSION

For the reasons stated herein, the Plaintiffs, Peter and Katherine Von Bank, respectfully request that this Court issue a Preliminary Injunction, after notice, enjoining the Defendant from breaching his agreement to surrender, cancel or otherwise return his 5,000 shares in MUA-B to either MUA-B or the Von Banks. Performance of the transaction must occur no later than the close of business, November 30, 2008.  The Von Banks have demonstrated a valid contract, a breach, and the basis for specific performance.  If the injunction is not issued, their chance to collect the bargained for settlement in the Sersland Suit will be lost forever, as will their chance to share in the benefit of the new venture. To the extent necessary, the Von Banks also seek an Order finding the transfer of shares by Fredrick to EIC Holding, Inc. to be in violation of Article 14 of the Articles of Association of MUA-B and therefore null and void, and any shares

thereby transferred should be returned to Fredrick, so they can be treated consistent with

the injunction.

Respectfully submitted,
Peter and Katherine Von Bank,
By their Attorney,


_____
Kenneth I. Gordon, BBO# 556762
63 Chatham Street
Boston, MA 02109

Dated: November 24, 2008                     (617) 742-4602